The Honorable Judges of the United States Court of Appeals for the Third Circuit Oyez, oyez, all persons sitting in business with the Honorable United States Court of Appeals for the Third Circuit are admonished to appear and give their attention for the court is now in session. For God's sake, the United States has dishonored the court. Thank you Ms. Skowarski Good morning everyone. We're here for argument in the case of Cristallex International Corporation v. Petroleos De Venezuela. Are counsel ready to proceed? Yes, Your Honor. All right. Yes, Your Honor. Is Mr. Imer? Yes, Your Honor. Am I pronouncing that correctly? Absolutely so. Good morning, Your Honors. May it please the court, I'm Nate Imer. I'll be arguing this morning on behalf of the appellant, P.D.B. Holding, which I'll refer to as P.D.B.H. occasionally. May I reserve three minutes? You may. Thank you, Your Honor. Let me start out, Your Honors, by indicating what P.D.B.H. is not alleged to be. We're not alleged to be a debtor to Cristallex. The only debtors in this case are the Republic of Venezuela and allegedly P.D.B.H., Petroleos De Venezuela S.A. That's alter ego of Venezuela. We have been alleged to be a transferee, but as Judge Stark correctly found, we're not a transferee in the sense of ducta. P.D.B.H. was a transferee of assets of its subsidiary, Sitco Holding. Sitco Holding is neither an alter ego of Venezuela nor a debtor. So the assets transferred to P.D.B.H. were assets of Sitco Holding. So the only transferring status that you have is a receipt of dividends from Sitco, is that correct? That's correct, Your Honor. So otherwise we are not a transferee under the ducta statute. In order to be a transferee under the statute's terms, we have to be a transferee of the assets of a debtor. So no transfer was made by P.D.B.S.A. or Venezuela. That's correct. Not to Sitco, P.D.B.H. There is an allegation that the dividend that was declared by P.D.B.H. to Petavesa was transferred to Venezuela. So that's the transfer, I think, that Chris Lex is relying on in this case. So we're not a transferee under the ducta sense. And no one has alleged, I don't think anyone could allege, that we benefited from the transfer. It was a removal of $2.2 billion from our treasury to Petavesa. No one has alleged that we're a beneficiary of that transfer in any way. You know, one thing that occurred to me looking at Chief Judge Stark's opinion, it seems to me we're supposed to look at how the Delaware court would view this situation, the Chancery court. And I'm not sure that he really went into that analysis. How would that analysis go as far as you're concerned? I think that analysis would be very short and very limited, actually, Your Honor, because I think Vice Chancellor Strine, now Chief Judge Strine, addressed just this issue twice, once in the Trenwick decision and then again in more detail in the Edgewater case. And he very specifically found in Edgewater. He started off in Trenwick by saying that there could be no aider in a better liability or no conspiracy liability under the Delaware statute because Delaware employs a plain language reading to its statutes, particularly this statute. But then he was very clear the second time around in Edgewater. And it couldn't be clearer. If I may just read his quote to the court, he said, by its own terms, DUFTA only provides for a cause of action by a creditor. And then he lists who can be sued under the DUFTA statute, a debtor transferor, and we're not alleged to be a debtor transferor, or a transferee, and this includes injunctive actions, or a person who benefited from the transfer. There were none of those. And so I think under the readings given to it by the Chancery Court, we could never have been a defendant in a DUFTA action. Did Crystal X allege that you, in fact, did transfer dividends received from CITCO? They allege we transferred dividends received. Mr. Lerner's essay? Yes, they allege we transferred dividends received. Well, we transferred, we received dividends from CITCO holding, and then we declared a dividend to PETAVASA, and then transferred PETAVASA's dividend to Venezuela, presumably. That's the transfer that I think Crystal X is relying on, that last transfer. The purpose of the CITCO dividend was to get that money to Venezuela. The purpose of the CITCO dividend was a transfer of non-debtor property, so that can't be part of the DUFTA claim. It has to be under the definition in DUFTA, there has to be a transfer of property by the debtor. But it seems to me that from the very beginning, I mean, the allegation here is that the money, the dividend was designed to get that money into Venezuela and to keep it away from Crystal X, which had won an arbitration award. That's clearly what Crystal X alleges. Crystal X essentially alleges a conspiracy among CITCO holding and PETAVASA and PDV holding and the Republic of Venezuela to take money from CITCO holding and send it all the way to Venezuela. But that's precisely what the Chancery Court said you can't allege under the DUFTA statute. Chief Judge Stark already found that there can't be a conspiracy claim under DUFTA, and that is correct. That's what Vice Chancellor Strine held. Nor can there be an aiding and abetting claim, which I think is what Crystal X keeps wanting to argue we did. Either aided and abetted or conspired to be part of this series of transactions. They don't use those terms. They say that Venezuela devised the plan, enlisted its alter ego, directed, devised a scheme, had a strategy. So it really alleges a principal role on the part of Venezuela as compared to just an aiding or abetting or conspiracy. They don't use the words aiding or abetting. I agree with that. But they certainly allege that CITCO holding and PDV holding was part of that whole scheme and that we knowingly participated in that scheme. And they can't have it both ways, Your Honor. As we pointed out, to just say that we were an innocent transferor without some sort of evil intent would completely overextend the DUFTA statute. Because then banks that just innocently transferred money could be a DUFTA defendant. And so that can't be right. And Crystal X actually realized that. So they said that somehow this court should realize or read into the statute a good faith requirement, that the money wasn't transferred in good faith. But by so narrowing what they're arguing, they now are saying that we had evil intent. That's clearly what they're saying, that we had some sort of malicious intent to facilitate this fraudulent transfer. And once they do that, now they're in aiding and abetting and conspiracy, which Judge Stark already found in the conspiracy claim they can't bring. So either we're an innocent non-debtor transferor, in which case there can't be a claim against us, or a non-innocent non-debtor transferor, in which case they walk right into the aiding and abetting and holdings of Vice Chancellor Stein. Can I address a question I have on the Foreign Sovereign Communities Act? And that is, how is the mere existence of a DUFTA lawsuit an attachment, arrest, or execution of property? Let me turn to the Foreign Sovereign Communities Act, if that's appropriate. I think the answer to that is that this court in Feinberg came actually fairly close to answering that question. But the Seventh Circuit and the Second Circuit do answer that question by saying that you have to look at the effect of the... Well, I understand that. I understand the pre-judgment security issue that has the effect of an attachment. But how is the mere existence of a lawsuit an attachment? Well, I think what it does is it clearly burdens the sovereign in bringing its property, by making it a tort violator in sending its property to Venezuela. That's exactly what's going on here. You know, it's interesting, and I'll come back to another case in a minute out of the Ninth Circuit, but I was reading the interesting display that the court put downstairs about the First Amendment. And I didn't mean to read it in the context of this case. I was just reading it for interest. And at the end of it, it talks about New York Times v. Sullivan. And I understand we're talking about a constitutional requirement there. But there, the Alabama libel law was considered to be a burden on the exercise of free speech, not because it operated in advance, but because it hindered, it delayed, it somehow inhibited... It says that the foreign sovereign gets a pass on the fraudulent transfer transactions. So if they want to engage in fraudulent transfers, that's okay. The Foreign Sovereign Immunities Act immunizes that transaction. Well, it immunizes it only where the property can't be otherwise hindered in its movement. Are you claiming immunity under the Foreign Sovereign Immunity Act? I'm talking about 1609 immunity, where the property is immune. I think that... Immunity from attachment. Immunity from attachment, yes, Your Honor. Well... Not 1604 immunity. Under the Foreign Sovereign Immunity Act, you're claiming immunity from attachment? The property at issue here is recognized and agreed to. That is the property of the Republic of Venezuela. Could you do a yes or no, or is it maybe? I do contend that the property of the Republic of Venezuela is immune from any restraint. The property, I'm talking about PDBH. PDBH? Yeah. That's your client? That's my client. Who has the property now? I think the government of Venezuela has the property. But to get to my point, you're not a sovereign immunity, you're a corporation in Delaware. That's correct. Okay. So you're not immune from this transaction, basically. I mean, if you were held liable in the district court, you would be, subject to whatever is determined you owe as a consequence of this transaction. I think my position in this is that while we're not immune under 1604, putting liability on PDBH here or on PDVSA, the Petroleum of Venezuela, either one of those situations would act as a restraint on the property itself and as such violate 1609, which makes that property freely movable by the sovereign. Are you here on behalf of Venezuela, the country Venezuela? No, Your Honor. But you're making the argument on its behalf? No. I think the courts have recognized that the court in the Second Circuit and the Seventh Circuit have recognized that the court has to address on its own the immunity of that property and whether the immunity is being infringed by the action before it and that it doesn't require the sovereign to appear in court to assert that immunity. That immunity is before the court by the very nature of the property at issue. And I refer to the court, the S&S and Pine Top in those cases where the sovereigns are not present. Was PDH, PDVH, is it? Yes, Your Honor. I'm sorry for all the confusion. Was it created to facilitate the transaction that we are reviewing in this case? No. PDVH has been a longstanding corporate entity under Delaware law. It holds the stock of Citgo Holding, which holds the stock of Citgo Petroleum Corporation, which, as you know, is a major petroleum refining company in Houston. What's the relationship between PDVH and Venezuela? It's stated as alter ego. What exactly does that mean? Well, that's the plaintiff delegation. PDVH is a government-owned corporation that basically operates its refining operations and its exploration operations in Venezuela. Government-owned corporation, all of the stock of which is owned by the country, Venezuela? That's correct, Your Honor. What is the status of the motion that was filed with the D.C. District Court to say that a reasonable period of time has passed and you can execute on the judgment? So that time has passed, and Crystal X is now taking actions in the courts of New York and in Delaware, as it's certainly entitled to try, to find assets of the government of Venezuela, to attach those assets to satisfy the judgment that the D.C. Court has now given it. So that award is now a judgment of the D.C. Court? Yes, Your Honor. And it's an executable judgment? It's an executable judgment. Do you know if Venezuela appeared or took part in the arbitration proceedings? I believe Venezuela did take part in the arbitration proceedings. It defended those proceedings. I suppose there's no impediment in Crystal X going to Venezuela to seek enforcement of its judgment? No, certainly it can do that. There's nothing that prohibits it from doing that. Although the likelihood of recovery is very small. That would depend on the courts of Venezuela, Your Honor. I can't comment on it. Thank you, Your Honor. Thank you. Mr. Weigel, am I pronouncing your name correctly? Absolutely, Your Honor. Thank you very much. May it please the Court, my name is Robert Weigel, and I represent the plaintiff below, Crystal X, the appellee in this court. I'd love to ask you the same question I asked your colleague, and that is that it seems to me that the job of the district court in this situation is to look at how Delaware would have viewed its statute and what case law helps you in terms of saying that there can be either aiding and abetting or conspiracy or something other than a direct involvement of the debtor here. Your Honor, we are not alleging an aiding and abetting claim. We are alleging that this was part of one coherent transaction, simultaneous in time, each step purposefully related to the next step. Okay. I've looked at the complaint and I've pulled out what I thought are the allegations. Maybe you can help me by pointing specifically to what you're saying in the complaint. What we're saying, Your Honor, is that You're saying a transfer was made by the debtor because Yes. Right. Because, based upon what? Let me, my wife tells me I need two salt shakers and a ketchup bottle to explain this transaction, but let me see if I can do it without props. Citgo Holdings is a wholly owned subsidiary of PDVH. It borrowed $2.8 billion at 12% interest for the sole purpose of issuing a dividend to PDVH. PDVH then took that $2.8 or I think it was $2.2 billion by the time it got to PDVH and that was then transferred on to Venezuela. Okay. This all happened. So Venezuela got an asset. Yes, it got $2.2 billion of cash. Isn't the fraudulent conveyance statute designed to prevent assets leaving the debtor as compared to going to the debtor? Your Honor is absolutely right that the usual fraudulent conveyance is assets away from the debtor, but most debtors don't have a home base where they can move the assets to. And the act prohibits transfers done to hinder or delay creditors. But it has to be transferred by the debtor. I'm sorry, Your Honor. It has to be a transfer by the debtor, and we don't have Venezuela having transferred any property here, do we? Yes, we do, Your Honor. First off, we allege that this is one transaction that should be collapsed under the court's rule. Well, what Delaware law helps you on that? There's a lot of case law in Delaware saying you in fact cannot collapse a transaction. And Chief Judge Stark found that collapsing wasn't appropriate here. He did, Your Honor. But what he did find was that there was a transfer by the debtor. The word transfer is defined in the statute and includes both direct and indirect transfers. So it's a transfer by the debtor to the debtor. Yeah. Well, a transfer by the debtor from Delaware to Venezuela where we couldn't get it. They touched on a fraudulent… I think it's property of the debtor held by the bank, and they say, well, we're going to have this transferred to our Venezuelan bank in Venezuela. There are badges of fraud that are set forth in DFTA that if they are met, if the transfer is done with the intent to hinder or delay creditors, the answer is yes, DFTA would prohibit it. And we're on a motion to dismiss here, but it's an intensely factual issue. But it's been set out in the statute what those badges of fraud are, and a number of them apply here. There's a Chancellor of the Court case, Edgewater Capital, that doesn't seem to help you at all. That court, although it's a Chancery court, held that it only provides, DFTA only provides cause of action against debtor-transferors. It does, but in that case, you're talking about directors. We're talking about a direct participant here. The statute says that if the transfer is made… So you're saying PDH is a direct participant? They're a direct participant. Where is that allegation in your complaint? It's in there that they received the $2.2 billion, and then they transferred it on. So they're arguing here that they didn't get a benefit from receiving $2.2 billion because they're saying at that point in time, at that precise point in time, it wasn't property of the debtor until they converted it. There's no dispute that the declared and unpaid dividend was property of PDH, which we've alleged is an alter ego, which is not challenged here. So there was a transfer of property by the debtor here from Delaware to Venezuela, and we allege to avoid… And Venezuela has the property. Venezuela has the property. And Venezuela is your obligor. Yes, Your Honor. So you have a right to get it. We do. It's only the fact that international law is preventing you. I mean, there is property there in the hands of the debtor that is available to satisfy your judgment. But the law prohibits transfers that are designed to hinder or delay creditors. But you can't read by the debtor out of a statute. And I'm not trying to. Judge Stark found that this was a transfer by the debtor. He looked at the term transfer, how it was defined in DFTA, and transfer includes indirect transfers. And he looked at the word by as defined by Webster's and said that includes agencies and instrumentalities. Are you asking us to conclude that PDH is a transferor under the DFTA statute? PDH is definitely a transferor. But it's not an obligor. It's not a debtor. It's not a debtor. But 1307 provides the remedies that the court can apply once there's been a transfer of the debtor's property with the intent to hinder or delay. So if there's no aiding in the betting liability as the Delaware courts have held under DFTA, how can PDH be held liable under DFTA for its role in this transaction? 1307 provides the remedies that are permissible. What's the limiting principle? It seems to me that you're saying we're not claiming aiding in a betting liability, but they participated in the transaction, they facilitated the transaction, and therefore they can be held liable. What's the limiting? How would we distinguish between this non-debtor transferor and some other non-debtor transferor? They possessed the money and they transferred it. And this court has not had trouble in the past finding this limitation on non-debtor, against non-debtor transfer. It doesn't appear in the statute. The statute allows under 1307 the court to imply either an injunction against future transfers of the property of the transferee. It allows the court to impose a receiver over the property of the transferee. And it has a broad catch-all phrase that allows the court to apply it whatever remedies the court sees fit. There's nothing improper in PDH's transfer of money. There's nothing wrong with that. Many transfers would necessarily be improper if they didn't have a badge of fraud attached to them. But this was done during the pendency of a lawsuit without consideration. And we allege that a number of badges of fraud, and it's not contested that we've alleged sufficient bases of, And in the Vose case, this court had no trouble finding a shareholder who was neither a transferor or a transferee liable. The Seventh Circuit just lets you... How do you propose that it's a fraudulent intent? Is it just a sequence of events in the way they occurred, or is there something more than that? It is, you have to look at all the factors. And what we've alleged is that there was a transfer without consideration during the pendency of a lawsuit, close in time, and these are factors laid out in the Delaware statute, close in time to a borrowing to a related party out of the country. And the case law says that, you know, the simple fact that one of them is established may not be enough, but when you have multiple, it's conclusive. The sequence of events began before you had a judgment. The sequence of events began while we had a pending arbitral claim. In other words, the arbitration had finished. Venezuela, suspecting that this isn't going well, decides to start moving assets out of the United States, where they could be executed upon, into Venezuela, where it is much, much harder, if not, frankly, impossible to do it. So they did this in order to protect those assets to prevent us from collecting on a valid claim on an arbitration that was pending in Washington, D.C., before the World Bank. So you really want the property to go back from Venezuela, the debtor, to PDVH, to a non-debtor. Is that correct? That's what would happen here. You put the parties in the position they were had the transfer not occurred. So the money goes back from Venezuela to one of these other corporations, correct? And then you take your chances as to your ability to garnish it in the hands of those other corporations? Is that the idea? Your Honor, that is certainly one possible remedy, but there's 1307 and 1308. 1307 deals largely with sort of injunctive relief. 1307 says the court can impose an injunction preventing further transfers of property by the transferee. So the transferee is Venezuela. Right, and the shares of PDVH are property of the transferee. That's not disputed. Future dividends would be property. So Judge Stark could issue an injunction, for example, say the shares of PDVH cannot be sold for less than fair consideration or that PDVH cannot issue another dividend. Judge Stark could impose a receiver on other property of the transferee, which would be the shares of PDVH. He could, if we prove our case, appoint a receiver over the shares of PDVH. One of the remedies we could get is either ordering the money come back, ordering the money come back. Do you really expect Venezuela to send money back to you? No, I don't, Your Honor. So your claim essentially relies on PDVH's ability to pay off the judgment. Venezuela has assets in the United States, and we're trying to find them everywhere. But this particular claim, one of the things that Judge Stark can do is he could give us a judgment against PDVSA. If they don't return the money, he could give us a judgment, and we could use that to go get other assets, even if they don't voluntarily bring it back. What happened with respect to your motion to amend the complaint to bring PDVSA back in? Your Honor, Judge Stark stayed everything pending this judgment. So they're not a party right now, PDVSA? They're not a party. Judge Stark, there were two Crystal X cases. One, the first transfer, and then as soon as Judge Stark ruled in our favor, PDVH went and leaned up 100 percent of its shares of Citgo Holdings. So that was the second fraudulent conveyance, and we were forced to bring that action. In the second action, Judge Stark allowed us to amend the complaint. In this action, he did not because he felt that there was some ambiguity about whether, given we were up in front of Your Honors, he had the power to do that. So he stayed it. How does the equitable relief or equitable phrase in the statute help you? It seemed like that's what Judge Stark was relying on. Yes. The statute is designed to be read broadly. The imagination of people trying to avoid their creditors is enormous. And, you know, for example, in the Seventh Circuit case, the Continental Casualty case, what happened was somebody sold an insurance business to a buyer, and they asked that the proceeds, some went back to the seller, but some of the proceeds went to somebody who had a phony reinsurance contract and somebody else who had a non-compete that was essentially worthless. And the court made quick work of the argument that that was not a transfer by the debtor. They said, we're not going to look at the technicalities. We're going to look at the substance of what happened here. And the substance of what happened there was that money that could have gone to the debtor's creditors was transferred to these other two entities. So even though they didn't receive anything from the debtor, it was all from the purchaser. The court had no trouble saying that the statute was flexible enough to apply there. And I would argue that if you look at what actually happened here, the substance, it's very simple. They took $2 billion that they could get their hands on, and they got it out of the country before we could get our judgment, before we could start to enforce. And we now have a judgment of the D.C. court, and we did get an order out of 1610C saying that we could start to enforce it. So then let me say, why wouldn't the FSIA protect this property? Because essentially now you've got your judgment. You're trying to attach assets. Right. And this is an asset in the hands of Venezuela. Well, we're allowed to get assets under the FSIA. We're allowed to get assets in the United States, and that's what we're trying to get. Is it your point that PDEVH is a wrongdoer in this case, and therefore you can attach its property? Yes, we are arguing that. They got $2 billion. They were direct participants. They were instructed by PDEVH to do this. And in their hands they took the $2 billion, and they transferred it from money they received in a dividend, part of a global plan, and then they converted it into property of the debtor, PDEVH, PDVSA, and transferred it out of the country to Venezuela. So there was a transfer of the debtor by the debtor. They were the participants in it. They were a non-debtor transfer. Judge Stark didn't get to the point of deciding what remedy would be appropriate. If I can indulge, I see my time is up. I have a question. There were a couple of cases cited from other jurisdictions, the Cone case, the Flomar case out of Alabama. Can you distinguish those cases? Those cases, again, do not involve transfers by the debtor. Judge Stark did find here that there was a, using the definition. Well, there were third-party non-debtors who transferred property in those cases. Right. In the Connecticut case, for example, it was a trust, and the trustees of the trust transferred the property in accordance with their rights as trustees to themselves, I believe, in that case, and the court held that they were not liable. But here there was a transfer of property of the debtor. Well, we know it's of the debtor. The question is, is it by the debtor? I guess we're going back and forth. Right. It wasn't really property of the debtor. It was property of subsidiaries of the debtor. No, Your Honor. Judge Stark made this distinction very clear. Under Delaware law, once a company declares a dividend, as what has happened here, and it hasn't paid it, then that is property of the debtor in the hands of the company that declared the dividend. So there was no question that there was property of the debtor in Delaware at the time, and that was transferred. They say you can't look at anything that happened before that. Judge Stark did not collapse the transaction, although he did say you could look at it. What if it were to be read to mean property on behalf of the debtor? Well, Judge Stark, applying both Webster's, the word buy and transfer as defined in the statute, noted that it says indirect transfer. It concluded that PDH was transferred. PDH's transfer was a transfer by the debtor in the sense that the debtor, we allege, the debtor caused that transfer to happen, directed that transfer to happen. Who owns all the stock of PDDH? PDVSA. PDVSA. PDVSA. And so the dividend was declared by PDVH to PDVSA. Yes, Your Honor. Did PDVSA then declare a dividend to its 100 percent stockholder, stock owner, Venezuela? We believe so, Your Honor, but we haven't had this discovery. That's not the allegation. Yes, it is an allegation on information belief that it went to the government, and it's an expectation that that is what happened, and I don't think my colleague disputed that. Would there be a DASDA claim here if there had not been the declaration of a dividend, but PDVH, for whatever reason, simply said, here, Venezuela, here's $2.2 billion? It would depend on the circumstances of the transaction and whether it was done with a fraudulent intent. If it was an ordinary commercial business. Why am I asking that question? Under that scenario, the property was never the property of the debtor until it was given to the debtor. As compared to the declaration of a dividend, what makes it the property of the debtor? I think if they just gave it without observing any of the corporate formalities, that might even be worse. Okay. But the usual way that you get money from a company to a shareholder is through a dividend. Yeah. I know my time is up. If I could just have a minute to address the Foreign Sovereign Immunities Act question. Sure. We haven't gotten to. My colleague talked about how this was unfair because it burdened Venezuela by the potential of having to be liable. They are not a foreign sovereign, and the Dole case in the Supreme Court makes this clear, but it also makes something else clear. The Dole case in the Supreme Court says foreign sovereign immunity, by contrast, is not meant to avoid chilling foreign states or their instrumentalities in the conduct of their business. It's not meant to not chill. Its point is to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comedy. They're a Delaware corporation. They're not entitled to comedy. The inconvenience of the suit is just part of the price of doing business in Delaware. And the argument that somehow the burden on Venezuela by having to comply with Delaware law immunizes its transfers such that corporations owned by foreign sovereigns can commit fraudulent transfers with impunity simply does not work. The Supreme Court in the Republic of Austria case said the same thing. The principal purpose of foreign sovereign immunity has never been to permit foreign states and their instrumentalities to shake their conduct in reliance on the promise of future immunity from suit in the United States. They get a procedural right to certain protections as set forth in the act. It's not a right to act in a certain way and to come into the United States, own a company, to operate a multibillion-dollar company in the United States, and then ignore Delaware law. Thank you, Your Honor. Thank you. Mr. Howard, can I ask a preliminary factual question? Sure. Dividends declared by CITCO to PDVH and by PDVH then to PDVSA. Yes, Your Honor. Any dividend declared by PDVSA to its 100 percent stockholder, the country of Venezuela? I don't know either way, Your Honor. Pardon? I don't know either way. You don't know either way. It wasn't alleged in the complaint, and I don't know. I just know the money was transferred out of the country. Out of the country. Out of the country. So the money would eventually wind up in Venezuela. But as far as you know, that money is now in the property of PDVSA. The last I knew it was the property of PDVSA. Whether it went somewhere else after that, I don't know. But PDVSA is alleged here to be the alter ego of the government of Venezuela. So according to the plaintiff's allegations, by giving it to PDVSA, we gave it to the Republic of Venezuela. Given the sequence of events, the way that the dividends were structured and how it went from CITCO to PDVH to PDVH very quickly and then to PDVSA and then to Venezuela. Yes. Why can't we conclude that all of those movements were orchestrated in order to avoid paying the judgment? Well, a couple of things. One is I think the plaintiff alleges that. I think they allege, and I was going to bring it to the court's attention, there's a whole series on page 43, footnote 20. There's a whole series of allegations of how PDVH effectively aided and abetted this conspiracy and developed this conspiracy to transfer this money or this fraudulent transfer. But that's precisely what DUFTA doesn't allow, according to Vice Chancellor Stein in his two opinions and the Brown case in the bankruptcy court. There is no aiding and abetting or conspiracy liability under DUFTA. Vice Chancellor Stein invited the Delaware legislature to amend the statute to broaden it because he could see that potentially that might be a cause of action, as Your Honor is hinting at, but the legislature for seven years has never done that. The key here is not how broad the remedies are, and counsel just talked about how broad the remedies are under DUFTA under 1307, I think it's A3, but it's not a question of the remedies. The question is what's the liability of my client? There's no cause of action against my client under DUFTA. That's the hard facts of this, and that's the hard facts Vice Chancellor Stein confronted in Edgewater. There's no cause of action regardless of what. Once there's a cause of action, yes, there's very broad remedies. We understand that, but there's no cause of action against us. And, Your Honor, Judge Rendell, you asked a question about our ability to assert the FSIA, and I mentioned a couple of the cases. I just wanted to mention a couple more. There's the Rubin case in the Seventh Circuit, the Peterson case in the Ninth Circuit, and Walker International Holding out of the Fifth Circuit. All would allow us to assert. What was the first case you mentioned? The Rubin v. Iran in the Seventh Circuit. All of those, I believe, would allow us to assert the sovereign immunity, the immunity over the property under 1609. If the Court has no further questions, I have nothing for anything else. Mitch. Nothing further. All right. Thank you very much. The case, of course, was extremely well argued. I would like to get a copy of the transcript and ask that counsel confer to split the cost of the transcript of the argument. And we stand adjourned. Thank you very much.